JOHN W. MAHAN AND THOMAS H. MAHAN, PLAINTIFFS AND RESPONDENTS, *v.* MERLE HARDLAND AND AMERICAN SHEET METAL ROOFING CO., INC., DEFENDANTS AND APPELLANTS.

No. 11003.

Submitted January 14, 1966. Decided January 25, 1966.

410 P.2d 156.

John H. Risken (argued), Risken & Scribner, Helena, for appellants.

Mahan & Mahan, Helena, Philip W. Strope (argued), Great Falls, for respondents.

PER CURIAM:

This is an appeal from a judgment in the amount of $7,758.40 entered by the district court sitting without a jury. Judgment was for plaintiffs and defendants appealed.

Plaintiffs are attorneys at law. Defendants are the former president and principal stockholder of a construction and contracting company, and the company itself. The nature of the suit will hereinafter be set forth. The facts giving rise to the action are:

The United States Government built a new hospital facility at the Veterans Administration Center, Fort Harrison, the prime contractor for which was Henry George & Sons. One of its subcontractors was Carlson-Duluth Company. Defendant American Sheet Metal Roofing Co., was awarded a subcontract for heating and ventilating work, working under Carlson-Duluth. Its bid of about $180,000 was accepted in 1961.

The work of defendants on this job was completed in 1963, and they had been paid about $140,000 on the contract, leaving a balance of slightly less than $40,000 due them. When payment was not forthcoming, they contacted the plaintiffs as attorneys for the purpose of recovering for them the amount due. First, the plaintiffs prepared certain papers for filing in state district court for an attachment, and they were later advised that the proper procedure in this instance would be to file an action in Federal District Court under the so-called Miller Act. Plaintiffs gave written notice to the contractor, subcontractor and their bonding companies on behalf of defendants here that a sum certain was due and that unless payment was received suit would be filed in Federal Court. When no response to this demand was made, plaintiffs filed a complaint

in Federal Court one day prior to the time running out for such filing.

The Federal defendants appeared by way of motion to dismiss, which was overruled, then they answered. A deposition of Hardland was taken, and after negotiations, in which Hardland actively participated, a figure of $38,792 was agreed upon. A stipulation to dismiss the Federal case was entered into by the parties and was filed in that case.

When the checks from the bonding company arrived, they were delivered to plaintiffs, who notified defendant Hardland. A dispute arose as to the amount of the fee which the plaintiffs were to receive, it being contended by defendants herein that there was no written agreement as to their employing the plaintiffs, and that it was their understanding that if the case "went to court" or "went to trial" that the fee would be fixed by the Federal court judge, but if it did not, the fee would "not be too much." Discussion of the fee between plaintiffs and defendant took place after plaintiffs had started to represent them.

Plaintiffs then initiated this action, denominated a declaratory judgment action, for recovery from defendants of an attorney fee. After various proceedings, an amended complaint was filed, which was answered by defendants. In their answer, a jury trial was demanded by endorsing such demand upon the answer. This was objected to by the plaintiffs, and, after a hearing before Judge Lester H. Loble, the objection to a jury trial was overruled.

The matter came on for trial on May 25, 1965, before Judge Truman Bradford, who had been called in after the disqualification of both Judge Loble and Judge Victor H. Fall. Before trial commenced, plaintiffs moved for an order dismissing the jury panel then waiting outside the courtroom to be called, and, after argument, the lower court granted their motion and dismissed the jury. Exception was noted. The court then proceeded to hear the evidence of various witnesses called on behalf of both sides. After taking the matter under advisement,

the lower court found for the plaintiffs and found them entitled to $7,758.40, plus costs and interest. This appeal followed.

Appellants cite five specifications of error. Three of the specified errors go to the Findings of Fact, but in our view of the case, as will appear, these three errors need not be discussed. The other two specified errors, we shall restate as follows:

(1) Is a declaratory judgment action proper in the circumstances pleaded?

(2) Even assuming a declaratory judgment action proper, is a jury trial required on timely request?

As to the first question posed, we note that no attack was made until defendants' motion to dismiss at the conclusion of the trial. We do note too, in connection with both questions, that, after Judge Loble had granted a jury trial by denying objections, the new judge, Judge Bradford, in effect overruled that decision and denied a jury trial. But in doing so exemplified the quandary posed by both questions in these gem-packed words:

"This is the most bastard suit I have ever seen, to tell the truth."

The district judge then took a short recess with the expressed hope that, "* * * gentlemen, you will have settled the matter." The district judge's profound wisdom and vision were shortlived, however, as immediately after the recess when no settlement was reached, he granted the plaintiffs' motion to dismiss the jury. Even then, defendants asked for a vacation of the trial setting so that they might come to this appellate court for a ruling on defendants' right to a jury trial. This was denied.

Now then, as to the propriety of a declaratory judgment action. Just what was the claim pleaded?

Simply put, plaintiffs' claim was to recover attorney fees due as a result of services performed. Put this simply, we need no citation of authority that declaratory judgment is not a

proper remedy. Counsel for plaintiffs admits this. However, he argues that the answer and interrogatory taken from defendants supply an agreed oral contract, and that this court in Carpenter v. Free, 138 Mont. 552, 357 P.2d 882, approved the use of the statutory declaratory judgment action (Title 93, Chapter 89) in such a situation.

But, what is missing is the agreed oral contract. That there was an oral contract of hire is admitted; but the terms of the contract are not. Plaintiffs' version is this:

"Q. All right, but you took the matter of collection of Merle Hardland's $40,000—now was that on an hourly basis, or a contingency fee? A. Well, it started out that it was to be a collection, and I told Mr. Hardland that I would do it as cheaply as possible, depending upon how much time it took; if we went to Federal Court, it would be a 20 percent contingency fee.

"Q. You heard the testimony in court this morning? A. Yes.

"Q. And I think his words [Hardland's] were that if it went to Federal Court, the fee would be 20 percent, because the Court allows it, and that is what the judge sets, is that about right? A. That is the way we felt about it.

"Q. Is that your recollection of the conversation between you and Merle Hardland on the fee? A. Yes, except that I think I originally told him when we first talked about it, if I wrote a letter to this company and they paid in full, I just would charge him for the letter, and if I had to go further, and eventually told him, if we had to go to Federal Court, it would be 20 percent.

The same witness, plaintiff Tom Mahan said on cross-examination:

"* * * At the time I originally talked to him, we were going to try to do it as cheaply as possible for him; and sometime between June and September, I told him the fee would be 20 percent, if we went to Federal Court, in case I filed it.

"Q. Did you say the fee was allowed by the judge and it might be 20 percent, or did you say it was going to be a flat 20 percent, without referring to the judge at all? A. I believe

we had several discussions about it, and I believe, at one time, I told him that if we went to Federal Court, the fee would be 20 percent, and another time, we discussed the fact, *I thought the judge would set the fee at 20 percent.*" (Emphasis supplied.)

Defendant Hardland's version is:

"My recollection of the fees, when I asked Mr. Mahan, he said, 'If it has to go to Federal Court, the judge usually sets the fee, when the case is complete, and usually sets it at 20 percent, but if we do not have to go to Federal Court, it won't cost you too much.' "

We think a fair reading of both versions indicates that the minds of both parties anticipated a fee to be set by the Federal Judge, a contingency that did not happen. To clarify the fact situation, we comment here that even yet defendants agree they owe plaintiffs for services, and offered, according to the pleadings, on a quantum meruit theory, $7\frac{1}{2}$ percent of the amount collected. Thus, it appears there was, in the minds of both parties, an oral contract of hire, but the terms thereof, at best, were in dispute. Was the fee to be fixed by the Federal Judge as in the Miller Act suit, or was it to be a flat 20 percent of recovery? As to the latter, even plaintiffs' version confirmed that it was not a flat 20 percent of recovery agreement, but rather that the judge would fix it.

Reverting now to the propriety of a declaratory judgment action, we believe it clear without having to specifically rule, that at best it is an inept procedure under these circumstances, and as we have heretofore indicated, this is what the district judge felt. This leads us up to the question decisive here. Even granting such a liberal construction to the declaratory judgment statutes as to permit this action, may a jury upon proper, timely demand be summarily refused?

Our Uniform Declaratory Judgment Act provides in R.C.M. 1947, § 93-8909:

"When a proceeding under this act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined

in other civil actions in the court in which the proceeding is pending."

Rule 38, M.R.Civ.P., subsection (a) specifically reserves the right of trial by jury as provided in Article III, § 23 of the Constitution of Montana as inviolate. A timely and proper demand was made. But, plaintiffs admitting this right, argue that there were no issues of fact. We have already pointed out that the very subject of the claim for relief, the amount of the fee to be paid, was the fact to be determined. Further, the question remains was a contract in being at all, or put another way was the contingency so indefinite as to make the contract void?

Much is said in both briefs that the alleged contract of hire was contingent upon "going to court" and that "going to court" meant filing a complaint according to one version or "going to trial" according to the other version. But, referring back to the quoted testimony of plaintiff, Mahan, even he admits that between himself and a lay person the discussion upon which a "meeting of the minds" occurred, if at all, to raise a contract, concerned the judge fixing the fee. It follows, therefore, that the first issue of fact concerned whether a meeting of the minds of the contracting parties was had at all.

We think the proper rule is stated by the Colorado Court in Baumgartner v. Schey, 143 Colo. 373, 353 P.2d 375, 377. There it is said:

"The general rule of law applicable to declaratory-judgment actions is stated in 13 A.L.R.2d 790:

" 'Under this and similar provisions in the few states which have not adopted the Uniform Act, the courts have generally applied a historical test to determine whether a right to jury trial exists in a declaratory judgment action. Thus, if any of the parties would have had a constitutional right to jury trial on any issue involved prior to the Declaratory Judgments Act, such right is retained.'

"Though there is some divergence of view in states having adopted the Declaratory Judgments Act, C.R.S. '53, 77-11-1

et seq., the majority rule is that whether a party is entitled to have disputed issues of fact decided by a jury, is not determined by the fact that a declaratory judgment is sought, but whether the right to a jury trial existed prior to the passage of the Declaratory Judgments Act in the type of action involved. If so, there is a right to trial by jury in such action. If the action in which declaratory relief is sought would have been an action at law had it been permitted to mature without the intervention of declaratory procedure, the right to trial by jury of disputed questions of fact is not affected. This has the salutary effect of permitting the defendant a trial by jury whether the action is brought under the common law or under the declaratory-judgment statute. It is, therefore, clear that in a proper case a jury trial may be had in an action brought under a declaratory-judgments statute."

▆▆▆▆ And, in Banschbach Habeas Corpus, 133 Mont. 312, 323 P.2d 1112, the lower court, after a jury had been demanded, had refused a jury trial. This Court said:

"The better-reasoned cases take the view that where either the Constitution or statute gives the right to a trial by jury and the jury is demanded and not waived, the jury constitutes an essential part of the tribunal authorized to determine the facts, and that the court in attempting to determine the facts without a jury exceeds its jurisdiction. * * *"

And, at page 316 of 133 Mont., page 1114 of 323 P.2d this court continued:

"In Matheny v. Greider, 115 W.Va. 763, 177 S.E. 769, *the court held that when a jury trial has been demanded in a civil action the empaneling of a jury to try disputed questions is a jurisdictional requirement and a judgment rendered by the court without empaneling a jury is void.*

"To the same effect are Territory v. Ah Wah and Ah Yen, 4 Mont. 149, 1 P. 732, 47 Am.Rep. 341; Tambe v. Otto, 113 N.J.L. 71, 172 A. 544; Clayton v. Clark, 55 N.J.L. 539, 26 A. 795; Armstrong v. Jones, 139 W.Va. 812, 81 S.E.2d 675; State ex rel.

Marcum v. Ferrell, 140 W.Va. 202, 83 S.E.2d 648; Crouch v. United States, 4 Cir., 1925, 8 F.2d 435, and State v. Bates, 22 Utah 65, 61 P. 905. We fail to see any distinction in legal principle between the case where a jury may not be waived and one where it may be waived but in fact was not, as here. *The only tribunal that has jurisdiction to try issues of fact in a case where the statute confers the right to a jury trial when demanded is the court sitting with a jury, where as here the jury has not in fact been waived.*" (Emphasis supplied.)

We find the defendants were entitled to a jury trial.

For the foregoing reasons, the judgment is set aside and the matter remanded for trial.